Good afternoon. It's chilly May Day. The first case on this afternoon's docket is the case of People v. Tucker, Joe Tucker. And we have Mr. Peterson for the appellant and we have Ms. McCormick for the appellee. And you may begin. Thank you, Your Honor. May it please the Court. I am Gary Peterson from the appellate defender's office. I'm here on behalf of the defendant's appellant, Joe Tucker. There can be no doubt that Joe Tucker committed the murder of Jenna Reynolds. There can be no doubt if one believes the recorded confession that was introduced at trial. And that's what this case is all about, the truth or falsity of the alleged confession. The state proceeded on the theory that Tucker sought out Robin Gett, a serial felon, self-professed jailhouse lawyer, for the purpose of fabricating a defense to the charge of murder. And during the discussions, according to the state, Gett told Tucker to tell the truth and Tucker wrote out a full and complete confession to the crime charge. Tucker testified that he went to Gett for the purpose of getting his help in typing a letter to his attorney. And that Gett used psychological manipulation and tricked him into writing the alleged confession by telling him to put himself in the shoes of the killer. Under these circumstances, where the alleged confession went to the heart of the defense, and indeed to the heart of the trial itself, Mr. Tucker should have been granted funds to hire a clinical psychologist to interview him, prepare his psychological profile, and assist in the preparation of the defense. Psychological profile could have resulted in factors that could have placed the defense in context, such as tests for subnormal intelligence, susceptibility to suggestion, psychological disorders, stress or other environmental factors, and indeed the tactics used by his questions. Ultimately, it would have been up to the judge, based upon the facts developed, whether to allow the expert to testify at trial. But here we never even reached that point. There was no prior hearing or pre-trial hearing on the issue of whether the expert should be allowed to testify, because the expert was never appointed to conduct an evaluation in the first place. In denying the defendant's motion for funds to hire expert witnesses, the judge simply said, motion denied. You can do that through cross-examination. This was constitutional error of the first magnitude. Under the Sixth Amendment, the defendant not only has the right to confront the witnesses against him, he has the right to present witnesses in his own defense. Has any appellate court in Illinois made a determination that this type of false confession expert testimony is admissible? Of course, the case is cited in the reply. I would point to one in particular, I think it's People v. Rivera. In that case, the court held that Dr. Osh's testimony was inadmissible, and he would testify about the nature of false confessions itself. But the court did involve a clinical psychiatrist who conducted the initial evaluation to testify concerning these factors such as stress and susceptibility to suggestion. In this case, because you didn't have the psychological profile and you don't have the testimony from the clinical psychiatrist, there was no basis for the court to exercise discretion in determining whether witnesses would testify at trial. But the court could have followed Bennett and Rivera and said it's not beyond the scope of a normal person's ability to assess whether your will was overcome or whether you were susceptible to a suggestion. And the experts, while they were granted, they were not allowed to testify, correct? Well, yeah, experts weren't. In your case, you didn't even get an expert. But in the case that's cited, they got an expert, but they were not allowed to testify. Well, in Rivera they were. They were in Rivera? One was, one wasn't. Okay. The clinical psychiatrist testified about the factors relating to suggestibility and the defendant's particular personnel. And while the cases differ to the extent to which experts were allowed to testify at trial or were not allowed to testify at all, in all the cases cited by both the State and the defendants, expert was appointed in the first instance to conduct the examination of the defendant. And the expert's value lies not only in his testimony at trial, but in his help and assistance to the defendants in preparing questions to ask the opposing witnesses or even the defendant himself. In Illinois and in the United States Supreme Court have clearly held that the right to summon witnesses should not be rest upon the defendant's financial resources. So where an indigent defendant is entitled to funds to hire an expert, where the issue goes to the heart of the defense. For instance, in Watson, where the charge was forgery, the defendant was entitled to a handwriting expert. And in Lawson, where the state was relying upon shoe prints, the defendant was entitled to a shoe print expert. In this case, which was all about the confession, the credibility of the confession, the defendant should have been entitled to a clinical psychiatrist who could assess the defendant's vulnerability to suggestion and other factors that could result in false confessions. If there are no further questions about argument number one, I will speak briefly as to issues two and three. The defense filed a motion for a new trial based upon newly discovered evidence, noting that important documents had just been found in the counsel's files. The important documents were the questions that Gett had typed for Tucker to send to his attorney. And he supported Tucker's testimony that he went to Gett for the purpose of getting his questions typed, as opposed to the prosecution's theory that he sought out Gett. Excuse me, was it newly discovered if it was there all along? The judge was correct in denying the motion. It was not newly discovered evidence, Your Honor. Newly discovered evidence exists when the evidence could not have been discovered sooner through due diligence. But here, counsel's failure to exercise due diligence resulted in ineffective assistance of counsel. Let me just ask a question about that exhibit, if I could. Was this the typed questions, or was this the handwritten ones? These were the typed questions. Okay. Questions that Gett typed for Tucker. And these are important documents. The defense noted in its motion for the new trial that these were important documents. The state hammered Tucker throughout the trial, opening, cross-examination, closing, and rebuttal on its theory that Tucker sought out Gett to fabricate this defense. In fact, the prosecution went as far as to distort the defendant's testimony during the prosecution's rebuttal closing argument. Quoting, the prosecutor stated, the defendant said he went to Robin Gett in an effort to get Mr. Gett to help him find a way to defend against these charges. But the defendant's testimony was just the opposite. He denied that allegation, and his thing was he went to get these questions typed. The introduction of the list of questions would have corroborated his testimony, while also undermining the prosecution's claim that Tucker sought out Gett to fabricate the defense. And in this case, where the truth or falsity of the confession was the central issue at trial, the introduction of this documentary evidence could have changed the outcome. I need to go back to the third issue. The state acknowledges that the trial court considered Tucker's claim of innocence. I'm sorry, but your time has expired. Oh, I'm sorry. Thank you. You'll have the opportunity on rebuttal. Ms. McCormick? Counsel, I think the defendant, from looking at his reply brief, that the defendant and the state agree that the judge below had wide discretion whether to appoint this expert witness. And the issue is whether the court committed any abuse of discretion. And to do that, you have to examine what the reasons were that the defendant was requesting this expert testimony. And you also have to examine whether this expert testimony is crucial to a proper defense. Well, if you look at the record, you'll find that below, the defendant asked for a request for expert testimony in order to explain why the defendant wrote out this confession to Gett. And then the defense went on to say that it was due to him being under a lot of stress and due to his frustration and disappointment, and defense counsel thinking he wasn't doing enough to help him. Well, these are all matters that are of common knowledge that ordinary people can understand and ferret out and come to a conclusion about. It doesn't involve, he wasn't asking for expert testimony because the defendant had some sort of mental health problem that would predispose him to confess. That never came up. There's a significant difference between having expert assistance and having the admission of the expert's testimony. Correct. He didn't get either. No. But he did get a full opportunity to explain why. And the jury, there was nothing, there was no expert testimony needed for the jury to determine why he would do this. And the crucial issue was which statement that the defendant made was correct, which was true. And this is what the jury had to decide. And they were given enough information to make this decision. Now, the defendant first said, wrote out a statement claiming that McDaniel's. Let me ask you a question about what you said a minute ago. Do you think it's within the understanding of the average juror as to why a person would make a false confession? To some extent, I think it is. I mean, I think it's understandable. I think the average juror understands about being under stress and so forth. Sure. But does that... I mean, they could understand ordinary reasons why someone might make a false confession in order to spare someone they love that they know really did it. I mean, that's an ordinary, common, understandable motivation. If it goes over, say, into someone having a mental health problem, a personality disorder or something, perhaps there might be a need for an expert. There is no doubt that there are certainly documented cases of people giving false confessions, right? Correct. But in this case, that's not what was claimed. They were just claiming ordinary stress and disappointment in counsel. These are matters of ordinary, common knowledge that a jury could understand. Wouldn't it be even harder for a juror to understand why somebody would give a false confession under ordinary stress and that sort of thing? Cases don't seem to hold that. The cases in Illinois that reach the issue affirm the trial court saying that false confessions are a suggestibility. But also, another thing that distinguishes the present circumstances is this isn't a police interrogation. There isn't that kind of added layer of stress or compulsion that the courts have recognized. This is not that circumstance where a defendant is called in and agrees to be interrogated and then they suggest, well, maybe it happened this way or maybe it happened that way, or they put pressure on them to say, well, you know, if you don't confess, maybe we'll take your kids away or something like that. There's no official interrogation. This is a private interaction between two inmates. And there's nothing in here that says that Gecht suggested this or that. Gecht did say right out of court. And if you believe the jury, I mean, the defendant's testimony, the defendant testified that Gecht said, well, put yourself in the place of the murderer and write it as if you did it. Well, the jury rejected that, and they had reasons to do that. The defendant initially made a statement saying that McDaniel did it, and then he made this full and rather complete and detailed confession that just detailed the grisly murder and explained. And the defendant offered an explanation for why he knew all the details, because he had access to discovery and the autopsy. And, you know, the jury couldn't believe that, but they didn't. But they had the method and the means to ferret out what was the truth. They were given all of it. They had enough information to do that. They also had the testimony of McDaniel, the man that the defendant was accusing of the murder. And McDaniel said, no, it didn't happen that way. And he contradicted the defendant's testimony. The jury could – they had McDaniel himself to determine whether he was credible or not. They had it all. They had all the information, and they didn't need an expert to explain why the defendant would be unhappy with his counsel and would seek out another inmate. What was crucial was not why he sought out the inmate. What was crucial for the jury to ferret out in this case was which time was the defendant telling the truth when he wrote out his detailed confession explaining exactly how he murdered Jana Williams, which was almost exactly 22 years ago today, not far from this court. It was on May 6, 1988. But – or was he telling the truth when he tried to implicate McDaniel? Well, they had all of the information they needed about McDaniel. They had all the information about why the defendant thought he was tricked into writing this confession. They had the information about why the defendant could write a detailed confession. They had all of that information. They didn't need expert testimony. And the court didn't commit any abuse of discretion in denying his request for an expert – appointment of an expert when the jury didn't need an expert to ferret out the truth of which time the defendant was telling the truth. And it also – you know, this isn't the kind of situation where you just have a confession and you don't have any other kind of physical evidence to substantiate the confession. Here we do have some physical evidence. First of all, the defendant always claims he was there. He claims he was having consensual sex with Jana. But he always said, you know, that he ejaculated on her pajamas and on the bedspread. So there's no – there's no doubt the defendant was there. He admits that in any event. And there is physical evidence that supports his confession either way because we have his DNA at the scene at the time of the murder. So the jury did not need an expert. What was the evidence of the motive for the murder if he could have consensual sex with Jana Reynolds? What was the motive? Well, that's the defendant's story. The defendant said at that point in time McDaniel wanted to make it a threesome, and they said no. And then McDaniel slashed Jana and threatened the defendant with a knife, and then the defendant left. And then according to the defendant's story, McDaniels killed Jana. According to McDaniels, he never went in, but he met up with the defendant outside in the neighborhood of Jana Reynolds' house, and they saw her, you know, through the window, and that the defendant had indicated that he wanted to go in and rob somebody. He was looking for somebody to rob that night. So, you know, it's which version is correct. The jury chose, and they had all the information. They had all the information they needed to judge which time he was telling the truth and to judge everybody's credibility. I take it there was no corroboration by anyone of any consensual relationship between the defendant and the victim? No. But wasn't there familiarity? Didn't they know each other? Yes. They knew each other from high school, and they had worked together at a restaurant. Yeah, they did know each other. But beyond that, there was no evidence of a relationship. That's just, you know, acquaintanceship and co-worker doesn't show relationship. But the jury had that information, too. They knew it all. And they didn't believe the defendant. They didn't believe his testimony. They believed his confession. And they had all the information they needed to ferret out the truth of it, and that's the way they decided. Now as to the other. Thank you, Ms. McCormick. Ms. Peterson, do you have a rebuttal? I have a question for you. When you had enumerated some factors where you thought it was appropriate for the court to appoint an expert, it seemed to me that that would be pretty much every case where there was a false confession asserted. So if I'm correct in my assumption, would the court then be abusing its discretion in every case? Well, under the law, where the issue goes to the heart of the defense. Now, not every case, confession goes to the heart of the defense. I think there was a case by our Supreme Court. Was it Nelson, 2009 case, where they applied this framework and found in confession there was other corroboration of other evidence. It did not go to the heart of the defense. But certainly in this case, this case was about the truth or falseness of the confession. I'd like to say just a few words regarding the common knowledge of the jurors, and I'm sure the jurors have views on the subject of false confessions, and I'm sure their views are the same as mine before I started this case, and that is why would an innocent person confess to a crime if he did not commit? People just don't do that. And as I skimmed the record, I saw Tucker made a written confession to a fellow inmate. I thought he's obviously guilty. But then I did some further research and started reading the literature on false confessions and found 25% of DNA examinations have involved false confessions. And the Seventh Circuit took up this question, U.S. v. Hall, the same experts that we're talking about here, Frumkin and Hall. And the court held that even though the jury may have had beliefs about the subject, the question is whether those beliefs were correct. Properly conducted social science research often shows that commonly held beliefs are erroneous. Expert testimony is relevant because jurors are unlikely to know that psychologists have identified a personality disorder that will cause people to make false confessions. And in Hall, they reversed because the trial court did not conduct a hearing as to whether Olshee would be allowed to testify. But in Hall, like the other cases, Olshee and Frumkin were both appointed and Frumkin examined the defendant and testified at a pretrial hearing. For these reasons, I ask this court to reverse the conviction and remand for a new trial. Thank you. Thank you, Mr. Peterson and Ms. McCormick. The case is submitted under advisement under ruling.